IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIRECTV, Incorporated, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03 C 8088 ) |
| PETE SCHULIEN, | ) Magistrate Judge Jeffrey Cole ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff DirecTV brings this action against defendant Pete Schulien, claiming that he engaged in the piracy of its encrypted satellite television transmissions. As such, DirecTV alleges that he violated the Federal Communications Act ("FCA"), 47 U.S.C. § 605, and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511-2512, and committed the common law tort of conversion. DirecTV has moved for summary judgment under Fed. R. Civ. P. 56(c) on its FCA and ECPA claims [1], and defendant has chosen not to oppose DirecTV's motion. For the reasons

---

[1] DirecTV does not discuss – or even mention – its common law claim for conversion in any of its summary judgment materials. As such, I assume it has abandoned the claim and I render no opinion on it herein. Coincidentally, I note that there is some doubt among the courts of this district as to whether a satellite transmission may be the subject of a conversion claim under Illinois law. Some courts of this district have held that a satellite signal may not be the subject of a common law conversion claim because the plaintiff is not entirely deprived of the ability to benefit from the property of the alleged conversions. *DirecTV, Inc. v. Vanderploeg*, No. 04 C 3883, 2005 WL 497797, *3 (N.D.Ill. March 2, 2005)(Andersen, J.); *DirecTV, Inc. v. Sampey*, No. 03 C 8520, 2004 WL 2032102, *5 (N.D.Ill. Aug. 19, 2004)(Lindberg, J.); *DirecTV, Inc. v. Hinton*, No. 03 C 8477, 2004 WL 856555, *4 (N.D.Ill. April 21, 2004)(Darrah, J.); *DirecTV v. Patel*, No. 03 C 3442, 2003 WL 22682443, at *2-3 (N.D.Ill. Nov.12, 2003)(Coar, J.). Other courts have found that the interception of a satellite signal may constitute conversion under Illinois law. *DirecTV, Inc. v. Ostrowski*, 334 F.Supp.2d 1058, 1065 (N.D.Ill. 2004)(Filip, J.)(discussing trend of state law in protecting intangible property such as confidential business information); *DirecTV, Inc. v. Dillon*, No. 03 C 8578, 2004 WL 906104, *4 (N.D.Ill. April 27, 2004)(Aspen, J.)(finding signal is an identifiable object of property); *DirecTV v. Dyrhaug*, No. 03 C
(continued...)

stated below, DirecTV's motion for summary judgment is granted.

# I

# BACKGROUND

## A

### Local Rule 56.1

Under Local Rule 56.1, a party seeking summary judgment must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1(a)(3). The statement must provide "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." *Id.* The party opposing summary judgment must submit a response to each of the moving party's factual assertions, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3). "All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B). The district court, with the approval of the Seventh Circuit, has long enforced the requirements of these rules. *Markham v. White*, 172 F.3d 486, 490 (7th Cir.1999) (discussing Local General Rule 12, the predecessor to Rule 56.1). This means that a district court is entitled "to decide the motion based on the factual record outlined in the [Local Rule 56.1] statements." *Koszola v. Board of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). Here, the defendant has chosen not to respond to DirecTV's motion for summary judgment or its

---

[1](...continued)
8389, 2004 WL 626822, *2 (N.D.Ill. Mar.26, 2004)(Shadur, J.)(likening signal to other types of intangible property).

Local Rule 56.1 statement. Accordingly, all properly supported facts in DirecTV's statement are deemed admitted. *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

## B

## Admitted Facts

DirecTV is a California-based company that distributes satellite television broadcasts to customers throughout the United States. It transmits digital signals to satellites, which then broadcast the signals back to Earth. To prevent the unauthorized reception and use of these broadcasts by individuals who have not paid for DirecTV's service, DirecTV encrypts or scrambles its transmissions. Customers who wish to receive DirecTV's satellite programming must subscribe to one of DirecTV's programming packages, and purchase certain hardware, including a satellite dish, an integrated receiver/recorder ("IRD"), and an Access Card that operates the IRD. Once DirecTV activates the Access Card by relaying the proper signal, the customer can receive and view the satellite broadcast in decrypted or unscrambled format.

In addition to encrypting its satellite signals, DirecTV takes certain other measures to combat the unauthorized usage of its transmissions. For example, it replaces older, compromised Access Cards with newer, secure versions. DirecTV also protects unauthorized access to its transmissions by periodically transmitting electronic countermeasures ("ECMs") through its network. ECMs are signals designed to recognize unauthorized Access Cards and disable them. Despite DirecTV's security efforts, individuals within the United States and surrounding foreign countries have developed devices which can surreptitiously receive and decrypt DirecTV's signals. These so-called pirate access devices include (1) Access Cards which have been digitally altered to appear as valid subscription cards, (2) "Programmers" used to modify access cards, (3) "Bootloaders" used to counteract DirecTV's ECMs, (4) "Unloopers" designed to repair Access Cards which have been rendered unusable by ECMs, and (5)

3

"Emulators" which eliminate the need for an access card by working with a computer to simulate the functions of an Access Card.

Defendant originally received DirecTV signals as a paid subscriber, beginning in 1997. (Defendant's Dep. at 33-36). At that time, he had two independent DirecTV systems, each with its own IRD and Access Card, and was able to receive distinct programming on each system. (Defendant's Dep. at 34, 36-37, 53). According to his deposition testimony, defendant began his involvement with cable piracy in August of 2000, when he purchased an unauthorized, modified access card from an internet vendor. (*DirecTV's LR 56.1 Statement*, ¶ 19, Defendant's Dep. at 49-50). About a month later, he purchased a smart card programmer, a device used to illegally program valid DirecTV Access Cards in order to access encrypted programming without payment. (*DirecTV's LR 56.1 Statement*, ¶ 20-21, Defendant's Dep. at 67-68). Defendant admits he used the device to attempt to "clone" cards – which refers to the technique of swapping certain internal information between Access Cards. (*DirecTV's LR 56.1 Statement*, ¶ 22, Defendant's Dep. at 49-51, 68-69).

Beginning in the spring of 2001 and continuing through 2002, defendant admits that he purchased additional pirate access devices, including one "Terminator Emulator" from DSS-Stuff on March 28, 2001; five more "Terminator Emulators" from the same outfit on April 17, 2001; and two "Terminator T-5 Unloopers/Loaders" from DSS-Hangout on May 23, 2001. (*DirecTV's LR 56.1 Statement*, ¶ 16, Ex. 3 (Defendant's Dep.) at 40-45). In addition, he also admittedly purchased and a variety of different Bootloaders, including two from Mikabu, an outfit in Canada. (*DirecTV's LR 56.1 Statement*, ¶¶ 23-25, Defendant's Answer to Amended Complaint, ¶¶ 17(f), (g), (h), (i); Defendant's Dep. at 73-75, 80-81; Whalen Aff. ¶25). He further admits that he purchased these

devices in order to receive unscrambled DirecTV broadcasts without authorization, and that he was successful in doing so. (*DirecTV's LR 56.1 Statement,* ¶¶ 16, 18, 23-25; Defendant's Dep. at 40-45, 47, 73-75, 80-81).

Next, defendant set up an internet website devoted to DirecTV signal piracy at the URL www.cardclean.net. (*DirecTV's LR 56.1 Statement,* ¶ 27, Defendant's Dep. at 39-40, 43, 86). This site was hyperlinked to two other such sites defendant maintained: www.buttsneeze.com and www.schu.cc (collectively, the "Cardclean sites"). (*DirecTV's LR 56.1 Statement,* ¶ 27, Defendant's Answer to Amended Complaint, ¶¶ 17(j); Defendant's Dep. at 86-92). For a fee of $25, the Cardclean sites offered the sevice of "cleaning" or "unlooping" Access Cards that had been disabled by DirecTV's ECCMs, (*DirecTV's LR 56.1 Statement,* ¶ 28, Defendant's Dep. at 87, 92). At the site www.buttsneeze.com, defendant posted information and advice on intercepting DirecTV signal through the use of an "emulation system." (*DirecTV's LR 56.1 Statement,* ¶ 29, Defendant's Answer to Amended Complaint, ¶ 17(k); Defendant's Dep. at 86). An individual interested in setting up their own "emulation system" could click the hyperlink listed and be directed to the "Emulation Hardware Page" at www.schu.cc. (*DirecTV's LR 56.1 Statement,* ¶ 30, Defendant's Answer to Amended Complaint, ¶¶ 17(l); Defendant's Dep. at 86-87). There, defendant offered Emulators for sale, as well as Bootloaders and Programmers. (*DirecTV's LR 56.1 Statement,* ¶ 30, Defendant's Answer to Amended Complaint, ¶ 17(l); Defendant's Dep. at 92-94). Because the Cardclean sites were cash operations, DirecTV has been unable to secure any financial records to verify the volume of the illegal businesses. (*DirecTV's LR 56.1 Statement,* ¶ 31). But, although defendant claims he was unable to sell any piracy devices – and there is no evidence that he did – he admittedly did have at least two customers for his "cardcleaning" service. (*DirecTV's LR 56.1 Statement,* ¶ 31, Defendant's

Dep. at 91-92).

Beyond that, defendant was also an active member of several internet forums dedicated to the dissemination of information on piracy equipment and techniques. (*DirecTV's LR 56.1 Statement*, ¶¶ 32-36, Defendant's Dep. at 50, 54-56, 58-61, 81-83). Some of these forums required payment to access specialized software scripts that ran as part of the emulation hardware setup. Schulien paid to join at least three such forums: dssnation.com, decodernews.com and ultra3M.com. (*DirecTV's LR 56.1 Statement*, ¶¶ 36, 43-47, Defendant's Dep. at 56-60). He was an active contributor to these websites from 2001 through 2003. (*DirecTV's LR 56.1 Statement*, ¶¶ 38-42).

In sum, defendant has admitted that all of the devices he purchased – one modified access card, six emulators, one White Viper programmer, six loaders/unloopers, and one Avenger bootloader – were used to pirate DirecTV's satellite transmissions. (*DirecTV's LR 56.1 Statement*, ¶ 49, Defendant's Dep. at 4-47, 49-50, 68, 74-75, 78). He admits to illegally modifying two Access Cards for two other individuals for a $25 fee. He also has admitted that he began pirating DirecTV programming for his own use in August of 2000, and continued to do so until DirecTV was able to "shut down [his] HU card"– the then current version of the Access Card – in June of 2003; a period of 34 months. (*DirecTV's LR 56.1 Statement*, ¶¶ 51-54, Defendant's. Dep. at 72).

## II

## ANALYSIS

### A

### Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

6

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As discussed above, the defendant has admitted the material facts set forth by DirecTV. But that does not mean that DirecTV simply wins on all points. "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609-10 (1970) (quoting the Advisory Committee Note on the 1963 Amendment to subdivision (e) of Rule 56 of the Federal Rules of Civil Procedure). "Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only 'if appropriate – that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.'" *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (citation omitted). Thus, the inquiry here is whether the properly established, undisputed facts support the entry of summary judgment as a matter of law.

# B

## DirecTV's Summary Judgment Motion

### 1

### The Defendant is Liable for Use of Piracy Equipment to Intercept DirecTV's Signal under both the ECPA and the FCA

DirecTV seeks recovery against defendant for signal piracy in violation of both the ECPA and the FCA. The ECPA states, in pertinent part, that: "anyone who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be ... subject to suit provided in subsection (5)." 18 U.S.C. § 2511(1)(a). The Seventh Circuit has held that encrypted satellite television transmissions are "electronic communications" under § 2511. *United States v. Shriver*, 989 F.2d 898, 902 (7th Cir. 1992). Furthermore, the ECPA provides a private cause of action via 18 U.S.C. § 2520(a) for those who have had their communications intercepted under § 2511(1). *DirecTV Inc. v. Nicholas*, 403 F.3d 223, 227 (4th Cir. 2005); *DirecTV, Inc. v. Randy Borow*, No. 03 C 2581, 2005 WL 43261, *5 (N.D.Ill. Jan. 6, 2005)(Norgle, J.); *DirecTV, Inc. v. Rajkovac*, No. 03 C 2004 WL 856465, *3 (N.D.Ill. Apr. 21, 2004)(Darrah, J.). Section 2520(a) allows for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate." Therefore, DirecTV can recover from the defendant under the ECPA if it can establish that defendant: (1) intentionally; (2) intercepted, endeavored to intercept, or procured another person to endeavor to intercept; (3) the contents of its electronic communications; (4) using a device. *Borow*, 2005 WL 43261, * 5.

The FCA similarly proscribes such conduct. Under 47 U.S.C. § 605(a), "no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto." Violations of this section are established if (1) DirecTV's transmissions are classified as "interstate or foreign communication by radio" under Section 605 and (2) defendant received and viewed without authorization the communication for his private use. See *Borow*, 2005 WL 43261, * 5. The law is clear that digital satellite transmissions are covered by Section 605. *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 914-16 (6th Cir. 2001); *United States v. Gee*, 226 F.3d 885, 890 n.1 (7th Cir. 2000)(distinguishing between the interception of coaxial cable and satellite signals); *United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996)("Congress indicated its intention that the interception of cable television programming as it travels through the air is to be governed by § 605 . . . "). When a violation of Section 605(a) has occurred, Section 605(e)(3) grants a private right of action to the aggrieved person or entity. *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2nd Cir.1993); *DirecTV, Inc. v. Rosario*, No. 03 C 8515, 2004 WL 1510015, *1 (N.D.Ill. July 6, 2004)(Lefkow, J.).

Here, there is no dispute that the defendant violated Section 2511(1)(a) of the ECPA, making him liable to DirecTV under Section 2520(a), and violated Section 605(a) of the FCA, making him liable to DirecTV under Section 605(e)(3). DirecTV's encrypted satellite transmissions qualify for protection under both the ECPA and the FCA. Defendant admits to purchasing piracy devices for the specific purpose of receiving DirecTV's signals without authorization, and to employing those devices to intercept DirecTV transmissions in his home. More specifically, at his deposition, he testified as follows:

9

Q. Why did you buy these devices?

\* \* \*

A. I bought them to try and get the signal from DirecTV.

Q. Were you successful?

A. Yes.

Q. And by "get the signal from DirecTV," you mean without authorization?

A. Yes

(Defendant's Dep. at 47). Defendant further admits to receiving DirecTV's signal, without authorization, for a period of approximately three years, until he was finally thwarted by DirecTV's countermeasures. (Defendant's Dep. at 71). During that period, he not only employed his piracy devices, but availed himself of piracy information from several websites dedicated to the practice. In addition, the defendant admits to assisting at least two other individuals in the unauthorized reception of DirecTV's programming. *See* 47 U.S.C. § 605(a)(making it a violation to "receive or assist in receiving" a transmission). At his deposition, he testified that he illegally modified cards for at least two individuals by "unlooping" them. (Defendant's Dep. at 91). Clearly, then, DirecTV is entitled to summary judgment as to the defendant's liability under Section 2511(1)(a) of the ECPA and under Section 605(a) of the FCA.

2

### The Defendant is Liable for Modifying, Importing, and Distributing Piracy Equipment under the FCA

DirecTV also claims that the defendant violated Section 605(e)(4) of the FCA. That section provides for penalties against "any person who manufactures, assembles, modifies, imports, exports, sells or distributes an electronic, mechanical, or other device or equipment, knowing or having

reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) . . ." Section 605(e)(3) grants a private right of action to "any person aggrieved by any violation" of Section 605(e)(4). *Sykes*, 997 F.2d at 1007. For the purposes of a remedy, each piracy device that is manufactured, assembled, modified, imported, exported, sold or distributed "shall be deemed a separate violation." 47 U.S.C. § 605(e)(4). Here, DirecTV argues that the defendant violated Section 605(e)(4) by modifying and distributing Access Cards, importing two piracy devices, and purchasing and using fourteen pieces of satellite piracy hardware which, according to DirecTV, constitutes eighteen separate violations. (*DirecTV's Memorandum in Support of Summary Judgment*, at 7-10).

a

## Liability for Modification, Distribution, and Importation of Access Cards

There is no dispute that the defendant modified and distributed two Access Cards. He admits that he illegally modified cards for at least two individuals by "unlooping" them. (Defendant's Dep. at 91). He charged $25 each for this service over his Cardclean sites. (Defendant's Dep. at 92). It is undisputed that the defendant knew that the purpose of these modified cards was to decrypt DirecTV's signals without authorization. (Defendant's Dep. at 67-72). Thus, the defendant modified and distributed two devices – the two Access Cards – which constitutes two separate violations.

Similarly, there is no dispute that defendant ordered and received two piracy devices – a Loader and a Bootloader – from a company called Mikabu which is located in Canada and ships its orders from there. (Defendant's Dep. at 73-74; Whalen Aff. ¶ 25). While existing case law does not offer interpretation of importation under § 605(e)(4), the plain meaning of the word import is the

11

"process of bringing foreign goods into a country." Black's Law Dictionary 759 (7th Ed. 1999); *see DirecTV, Inc. v. Brasswell*, No. 4:03-CV-330-A, 2004 WL 1562964, *2 n.3 (N.D.Tex. July 12, 2004)(requiring evidence that device was delivered from outside the United States to defendant); *DirecTV, Inc. v. Albright*, No. Civ.A. 03-4603, 2003 WL 22956416, *2 (E.D.Pa. Dec. 9, 2003)(same). DirecTV presented evidence that defendant did bring foreign goods into the country by ordering and receiving two piracy devices from a company located in Canada; indeed, the defendant is deemed to have admitted he imported the devices as a result of his failure to file a Local Rule 56.1 response. Once again, there is no dispute that defendant knew that the devices were "primarily of assistance in the unauthorized decryption of satellite cable programming," as he admittedly used them for that purpose. (Defendant's Dep. at 74-76). Therefore, under the plain meaning of "imports," defendant import two piracy devices into the United States, both in violation of 47 U.S.C. § 605(e)(4). DirecTV is entitled to summary judgment as to these two violations.

b

### No Liability for Use of Equipment to Modify Access Cards

Thus, DirecTV is entitled to summary judgment as to four violations of Section 605(e)(4). Its case regarding the remaining fourteen violations that it claims defendant committed, however, is unconvincing. According to DirecTV, the defendant admitted to using multiple pieces of piracy equipment – specifically, fourteen such devices – to illegally modify the aforementioned Access Cards. (*DirecTV's Memorandum in Support of Summary Judgment*, at 8-9). That, as DirecTV would have it, amounts to fourteen additional violations. But DirecTV cites no case law to support its method of tallying violations, and fails to so much as explain its method of computing damages. The failure to develop an argument constitutes a waiver. *See Kramer v. Banc of Am. Sec.*, LLC, 355 F.3d

961, 964 n. 1 (7th Cir.2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). The statute itself does not suggest such a method, and since courts should follow the plain language of a statute in determining its scope, however, *United States v. Turkette*, 452 U.S. 576, 580 (1981), I must reject DirecTV's method of counting violations.

The language of Section 605(e)(4) clearly targets the "manufacture[], assembl[y], modifi[cation], import[], export[], s[ale] or distribut[ion]" of piracy devices; it does not refer to the mere use of such devices. In other words, the *use* of a device to modify another device does not constitute a separate violation. In *DirecTV Inc. v. Robson*, 420 F.3d 532, 544 (5th Cir. 2005), the Fifth Circuit called it a "tautology" that Section 605(e)(4) did not apply to anyone who did not perform one of the statute's proscribed acts – such as modification or import – mere use, not being among them. *Id.* at 544. It is the *modification* of the two Access Cards that constitute separate violations here, not the use of whatever number of devices is necessary to complete those modifications. Simply put, the defendant modified two devices and imported two more, totaling four violations. It is of no moment that he might have used fourteen devices because use is not a violation of Section 605(e)(4). Indeed, even if the statute could withstand DirecTV's interpretation, it has not presented any evidence that the defendant used any of the devices to modify the Access Cards. (*DirecTV's LR 56.1 Statement,* ¶ 31).

## 3

### DirecTV is entitled to Statutory Damages, Costs, and Attorney's Fees

### a

### Damages under the FCA

DirecTV has demonstrated its entitlement to summary judgment as to defendant's vioations of Sections 605(a) and 605(e)(4) of the FCA. When a party successfully brings a civil claim under Section 605, that party is entitled to injunctive relief, monetary damages, and full recovery of all its costs. 47 U.S.C. §605(e)(3)(B). The grant of injunctive relief and monetary relief is within the court's discretion, 47 U.S.C. § 605(e)(3)(B)(i); (ii), but an award of costs, including reasonable attorneys' fees, is mandatory. 47 U.S.C. § 605(e)(3)(B)(iii). The recovery of damages is governed by Section 605(e)(3)(C), which provides that a party may elect to recover either actual damages or statutory damages. *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F.Supp.2d 955, 958 (E.D.Wis. 2001); *That's Entertainment v. Old Bridge Tavern*, No. 94 C 2612, 1996 WL 148045, *3 (N.D.Ill. Mar. 28, 1996)(Williams, J.). Here, DirecTV has chosen to pursue statutory damages.

Courts have great discretion in awarding statutory damages under 47 U.S.C. § 605(e)(3)(C). *DirecTV, Inc. v. Hendrix*, No. C-04-0370, 2005 WL 757562, *4 (N.D.Cal. April 1, 2005); *DirecTV v. DeCroce*, 332 F.Supp.2d 715, 721 (D.N.J. 2004); *Kingvision*, 146 F.Supp.2d at 958-59. Courts consider "both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions." *Hendrix*, 2005 WL 757562, *4; *Nat'l Satellite Sports, Inc. v. Garcia*, No. Civ.A. 301CV1799D, 2003 WL 21448375, at *2 (N.D. Tex. June 18, 2003). Some factors that courts have found relevant to the assessment of statutory damages include the pecuniary loss sustained by the victim as result of the offense, the financial resources of

the defendant, the financial needs and earning ability of the defendant, and the burden a damage award would impose on the defendant verses the burden alternative relief would impose. *Hendrix*, 2005 WL 757562, *4; *TWC Cable Partners d/b/a Staten Island Cable v. Bravo*, No. 94-CV-3250 (JMA), 1996 WL 933863, *3-4 (E.D.N.Y. Mar. 29, 1996).

i

### Section 605(a) Damages

Under the FCA, an aggrieved party may recover statutory damages for each violation of Section 605(a) in the amount of "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court in its discretion may increase the award of statutory damages by up to $100,000 per violation. § 605(e)(3)(C)(iii). In this instance, the defendant admits that he intercepted DirecTV's signal himself, and that he assisted two others to do so by supplying them with modified Access Cards, amounting to three violations of Section 605(a)'s prohibition against unauthorized reception or the assistance of unauthorized reception.[2] DirecTV does not argue that defendant's Section 605(a) violations warrant an increase of the award to $100,000 per violation. The range of damages available in regard to the defendant's

---

[2] Curiously, DirecTV argues that it has proven defendant committed seventeen violations of Section 605(a), because he purchased fifteen piracy devices and assisted two individuals. (*DirecTV's Memorandum of Law*, at 11). DirecTV offers no evidence, however, that the defendant used each device separately to intercept a signal. *See Adickes*, 398 U.S. at 157 (summary judgment must be denied where evidentiary material does not establish the absence of a genuine issue of fact); *Gudmundsson*, 35 F.3d at 1112. At most, the record DirecTV has assembled suggests that defendant may have intercepted two signals – he had two independent DirecTV systems. But courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, I must conclude that DirecTV has established its entitlement to summary judgment as to three violations – but certainly not as to seventeen.

Section 605(a) violations, then, is between $3000 and $30,000.

Notably, DirecTV has submitted evidence that the average monthly bill sent to the top 10% of its legitimate subscribers in 2003 was $229.08. *See DirecTV, Inc. v. Best*, No. 03 C 50220, 2004 WL 547113, *2 (N.D.Ill. Feb. 26, 2004) (referring to subscription rate to assess statutory damages). The defendant received DirecTV's signal without authorization for a period of 34 months, from August of 2000 to June of 2003. Therefore, actual damages for a single illegally decrypted signal may be calculated as 34 x $229.08 = $7788.72. This is appropriately within the range of statutory damages for a violation of Section 605(a). There is no evidence as to the length of time that the two individuals the defendant assisted in receiving DirecTV's signal actually received the signal, if they received it at all. Accordingly, the statutory minimum of $1000 is the appropriate award for those two violations. Therefore, DirecTV is entitled to an award of $9788.72 for the defendant's Section 605(a) violations.

ii

**Section 605(e)(4) Damages**

The statutory damage provision for violations of Section 605(e)(4) is similar, although it provides for more substantial awards. Under 47 U.S.C. § 605(e)(C)(i)(II), "for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just." Here, as already discussed, DirecTV has demonstrated that there is no genuine issue of material fact that the defendant committed four violations of Section 605(e)(4) – the modification and distribution of two Access Cards, and the importation of two piracy devices.

Although the defendant's acts of cable piracy should not be minimized, they were certainly

not particularly egregious. In other words, the defendant was not engaged in a large-scale scheme to defraud DirecTV. The sale of just two devices for a total of $50 pales in comparison with the record in other cases where the court award the $10,000 statutory minimum per violation. *See TWC Cable Partners*, 1996 WL 933863, *4 (finding that the defendant sold seven illegally modified converters; he was not engaged in a large scale scheme to defraud plaintiff, and the goals of punishment, restitution and deterrence are met by imposing the minimum statutory damages in the amount of $10,000 for each violation of § 605(e)(4)). In such instances, courts have generally concluded that the statutory minimum is a just award. *Time Warner Cable of New York City, a div. of Timer Warner Entertainment Co., L.P. v. Negovan*, No. 99 Civ. 5910 NGMDG, 2001 WL 1182843, *5 (E.D.N.Y. July 30, 2001)(even the minimum statutory damages of $10,000 for distributing a "pirate" decoder in violation of Section 605(e)(4) more than compensates plaintiff for any actual loss recoverable as restitution). As such, I conclude that DirecTV is entitled to $40,000 in statutory damages for the four violations of Section 605(e)(4).

b

### Damages under the ECPA

Section § 2520(c)(2) provides for recovery of damages for violations of § 2511. This subsection states that "the court may assess as damages whichever is the greater of (A) the sum of actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2); *Rodgers v. Wood*, 910 F.2d 444, 447-448 (7th Cir. 1990);

*DirecTV, Inc. v. Nicholas*, 403 F.3d 223, 227 (4th Cir. 2005).[3]

> Here, DirecTV seeks statutory damages under subsection (B), requesting:
>
> the sum certain total of the greater of $150,000 (15 statutory violations x $10,000 = $150,000) or $103,400 (1034 days in violation x $100.00 per day = $103,400) based on defendant's violation of the [ECPA].

(*DirecTV's Memorandum of Law*, at 13). As such, DirecTV argues that it is entitled to the greater sum, or $150,000. A review of the applicable law, however, demonstrates that DirecTV's calculations are suspect.

DirecTV's mistake is calculating the relevant number of violations in terms of the number of piracy devices defendant purchased. It must be recalled that DirecTV is proceeding under Section 2511. Although Section 2512 criminalizes mere possession of pirate access devices, it does not have a parallel provision for a private right of action. *DirecTV, Inc. v. Yee*, No. C 03-2304, 2005 WL 954471, *4 (N.D.Cal. April 26, 2005); *In re DirecTV, Inc.*, No. C-02-5912-JW, 2004 WL 2645971 at *8 (N.D.Cal. July 26, 2004); *DirecTV, Inc. v. Bloniarz*, 336 F.Supp.2d 723, 727 (W.D.Mich.2004)(rejecting DirecTV's "per-device" damage calculation, and determining that mere possession of a pirate access device does not give rise to a private cause of action under § 2512).

---

[3] There is some debate over whether damages under section 2520(c)(2) are discretionary or mandatory. The issue that has divided the appellate circuits, but the Seventh Circuit – the first to address this issue – has held that the language of section 2520(c)(2) requires trial courts to award damages to prevailing parties under the Act. *Rodgers*, 910 F.2d at 448. The Seventh Circuit stated that the term "may" as used in the subsection is "ambiguous" and "there is nothing in the legislative record explaining why Congress made the change from the word 'shall' to the word 'may.' In the absence of any such statement, we are hesitant to read a grant of discretion to the district courts where none had been permitted in the past." *Rodgers*, 910 F.2d at 448. Since then, the Fourth, Sixth, Eighth, and Eleventh Circuits have rejected this analysis and held that an award of damages under section 2520(c)(2) is discretionary based on the change in the plain language of section 2520(c)(2). *Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir.1995); *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir.1999); *Reynolds v. Spears*, 93 F.3d 428, 434 (8th Cir.1996); *DirecTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004). I am constrained to follow the Seventh Circuit's decision in calculating damages.

Accordingly, a "per-device" calculation of statutory damages is inappropriate here. DirecTV's recovery under this clause of the subsection is limited to the amount allowed under § 2520, namely $10,000.00, regardless of the number of devices or violations. *Smoot v. United Transp. Union*, 246 F.3d 633, 646 (6th Cir.2001) ("$10,000 liquidated damages amount under § 2520(c)(2)(B) is designed to compensate a claimant for all of the transgressor's misdeeds under the Act, unless that transgressor has violated the Act on more than one hundred separate days, in which case compensation is $100 for each such day"). Accordingly, when the other clause of the subsection is added to the equation, the proper choice is between $10,000 and $103,400 for 1034 days in violation. Therefore, DirecTV is entitled to $103,400 in statutory damages for defendant's violations of the ECPA.

## III

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment [#28] is GRANTED and the plaintiff is awarded damages in the amount of $153,188.72 plus attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). The plaintiff will submit an appropriately supported petition to establish the amount of attorney's fees and costs to which it is entitled.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 11/17/05